## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

THOMAS J. WALKER and                                :
ARTHUR R. WALKER, Jr                                :
30 Philadelphia Avenue                              :
Tunkhannock, PA  18657                              :
                                                    :
                    Plaintiffs,        :        CIVIL ACTION
                                                    :
        v.                                          :        NO. 03-3750 (SD)
                                                    :
BARRY O. BOHMUELLER, ESQUIRE       :        JURY TRIAL DEMANDED
and JON WIGHT, ESQUIRE                              :
and VICTORIA LARSON                                 :
and JOHN DOES 1-10                                  :
900 East 8th Avenue, Suite 300                      :
King of Prussia, PA  19406-1361                     :
        and                                         :
BRIAN J. NEWMARK, individually and t/a   :
ESTATE PLANNING ADVISORS CORP.       :
and MARY A. CHIAVAROLI                              :
525 West Chester Pike, Suite 201                    :
Havertown, PA  19083                                :
        and                                         :
NEW LIFE CORPORATION OF                        :
AMERICA d/b/a NATIONAL                         :
COMMUNITY FOUNDATION                         :
101 West Park Drive, Suite 160                      :
Brentwood, TN  37027                                :
                                                    :
                    Defendants.        :
_____:

## COMPLAINT

Arthur R. Walker, Jr. and Thomas J. Walker, plaintiffs herein, by way of Complaint

against Barry O. Bohmueller, Esquire, Jon Wight, Esquire, Victoria Larson, John Does 1-10,

Brian J. Newmark, individually and t/a Estate Planning Advisors Corp., Mary A. Chiavaroli, and

New Life Corporation of America, d/b/a National Community Foundation, defendants herein,

1

state as follows:

## NATURE OF ACTION

1.      Arthur R. Walker, Jr. and Thomas J. Walker (the "Walkers") are brothers in their eighties, who bring this suit against defendants, asserting causes of action, *inter alia*, for violations of federal and state securities laws, and for conspiracy, for fraud, for breach of fiduciary duty, and for violations of Pennsylvania consumer protection laws; the Walkers also sue Barry O. Bohmueller, Esquire and the individual attorney defendants, for legal malpractice, breach of contract, and breach of fiduciary duty; in connection with the  estate planning allegedly performed by Mr. Bohmueller and said defendants on behalf of the Walkers.  Because of the wrongful and fraudulent conduct of the defendants, and the professional malpractice on behalf of Bohmueller and the other attorneys who were working in partnership with him and the abuse of trust the plaintiffs placed in the defendants and their exploitation of the Walkers in breach of defendants' fiduciary duty, (1) the Walkers were fleeced of their life savings of $4 million, and fraudulently induced to purchase  tax-free  charitable annuities, which investment annuities in reality were the sale of securities without proper registration or disclosure, and which  investment  the Walkers did not need and did not desire; and (2) the Walkers were fraudulently induced to purchase and ended up with "estate planning" which was substantially more adverse to plaintiffs then their original estate condition before Bohmueller, Wight and the other defendants appeared in their lives, and (3) defendants  fraudulently induced Arthur Walker and Thomas Walker into giving to defendants almost all of their assets and life savings, comprising $4 million.  In addition, the defendants  conduct not only was wrongful and deceitful, but intentional and knowing and deliberate, and so outrageous and extreme, so as to warrant an award of punitive damages.

2

2.       Thomas J. Walker and Arthur R. Walker, Jr. are two brothers who grew up together, lived and live together, worked together, amassed a small fortune together in the tombstone business, and sold their business and retired together in 1988.  From their retirement in 1988, until June 27, 2001, they had lived comfortably in peace, enjoying their lives in Tunkhannock, Pennsylvania, during the summer seasons, and in Port Charlotte, Florida during the winter seasons, and living off of their $4 million portfolio and the interest thereon, which portfolio comprised a wide variety of liquid marketable and other securities.

3.       The Walkers suspect and thus allege that they were targeted by defendants wrongful scheme, in that, unsolicited and uninvited, on June 27, 2001, a pretty, young woman representative of defendants knocked on the door of the Walkers  residence, entered their home, and that day sold them on the need for "estate planning."  That day, defendants took $3,300.00 from the Walkers ($1,650.00 from each plaintiff).  Within a short time thereafter, the Walkers were visited by Jon Wight, who held himself out to be an attorney, and an investment advisor, affiliated with Bohmueller's law office and (the predecessor of) Estate Planning Advisors. Within a few months after defendants became involved in the lives of plaintiffs, they exploited and fleeced the plaintiffs of their life savings.  Defendants induced plaintiffs to give their fortunes away, through an  investment  in six (6) of the same purportedly  tax-free" charitable annuities being offered by defendant NCF (which six (6)  tax-free  annuities really were securities sales without property registration or disclosure, since the Walkers    investment constituted a 9% investment in the total assets of defendant NCF as of 2001, 16-1/2 % of the 2001 yearly revenues for NCF, and 73% of the 2001 year NCF  profit  (actually termed  excess  by NCF, since NCF is registered as a non-profit organization under Tennessee state law)).  When the dust settled from defendants  wrongful conduct and scheme and conspiracy, the

Walkers were left without their life savings, and with an investment in a tax-free annuity that was neither tax-free nor proper for them, and which did not provide them with the tax-free and other advantages as defendants had promised to the Walkers, and with an estate plan that was adverse to their interests and not in accordance with their expressed desires. Plaintiffs seek damages and an accounting from defendants for their wrongful conduct.

## PARTIES, JURISDICTION AND VENUE

4.      Plaintiff, Thomas J. Walker is an adult individual residing at 30 Philadelphia Avenue, Tunkhannock, PA 18657, in the summer seasons, and at 22391 New York Avenue, Port Charlotte, FL 33952, in the winter seasons.

(a)      Thomas J. Walker was born on October 30, 1918, and is currently 84 years old.

5.      Plaintiff, Arthur R. Walker, Jr. is an adult individual residing at 30 Philadelphia Avenue, Tunkhannock, PA 18657, in the summer seasons, and at 22391 New York Avenue, Port Charlotte, FL 33952, in the winter seasons.

(a)      Arthur R. Walker, Jr. was born on October 3, 1920, and is currently 82 years old.

6.      Defendant New Life Corporation of America, Inc., d/b/a National Community Foundation ("New Life" or "NCF") is, upon information and belief, a Tennessee non-profit corporation, recognized as a tax-exempt charitable organization under Section 501(c)(3) of the Internal Revenue Code, with its principal offices located at 101 West Park Drive, Suite 160, Brentwood, TN 37027.

7.      Barry O. Bohmueller, Esquire ("Bohmueller"), is upon information and belief, an adult individual who resides and works in the Commonwealth of Pennsylvania, in this district.

4

(a)     At all relevant times, defendant Bohmueller is an adult individual who was holding himself out as an attorney who was duly licensed to practice law and engaged in the practice of law in the Commonwealth of Pennsylvania, who resides in this district, with a principal place of business located at 900 East Avenue, Suite 800, Montgomery County, King of Prussia, PA  19406-1361.

(b)     Upon information and belief, during the time that defendant Bohmueller induced plaintiffs to engage him as their estate planning attorney, defendant Bohmueller had and currently has, one or more partners, defendants John Does 1-10, assisting defendant Bohmueller in the performance of legal services for plaintiffs.

(c)     Upon information and belief, during the time that defendant Bohmueller induced plaintiff to employ him as the estate planning attorney, defendant Bohmueller had, and currently has, an undisclosed interest and/or affiliation with one or more of the other defendants.

(d)     At all relevant times, defendant Bohmueller and the other attorney defendants, including, without limitation, defendants John Does 1-10 as partners of defendant Bohmueller and defendant Wight, by reason of his holding himself out as an attorney (collectively the  Attorney Defendants ) held themselves out as having the requisite skills and knowledge to represent the plaintiffs in the legal matters for which they were retained to provide to the Walkers.

(e)     Although defendant Bohmueller provided legal services for both plaintiffs, including the execution of living trusts and other estate planning services,

(1)     Mr. Bohmueller has never met his clients.

(2)     Defendant Bohmueller never obtained information from the Walkers concerning their assets, liabilities, income, expenses, and their estate planning desires; and

(3)     Defendant Bohmueller also never spoke with the plaintiffs while they were his clients (other than on one occasion, when Bohmueller spoke briefly to Thomas Walker on the phone, and asked him how Jon Wight was doing).

8.     Jon Wight, Esquire is upon information and belief an individual who also resides and works  in this district.

(a)      At all relevant times hereto, plaintiffs believe and thus aver that Jon Wight was holding himself out as an attorney who was duly licensed and engaged in the practice of law in the Commonwealth of Pennsylvania, in concert with defendant Bohmueller.

(b)     At all relevant times hereto, plaintiffs believe and aver that Jon Wight also was a principal and/or employee of defendant Estate Planning Advisors and/or otherwise associated with Estate Planning Advisors and/or defendant Brian J. Newmark, the principal of EPA.

9.     Defendant Victoria Larson is an adult individual who upon information and belief resides and works in this district, who was employed by Bohmueller and/or one or more of the other defendants, and who participated in the wrongful conduct of defendants by soliciting the Walkers to retain the legal services of the Attorney Defendants, and the estate planning services of one or more of the defendants, in the first instance.

10.     Estate Planning Advisors Corp. ("Estate Planning Advisors" or "EPA") is, upon information and belief, a Pennsylvania corporation, with its principal offices located at 525 West Chester Pike, Suite 201, Havertown, Montgomery County, PA  19083.

(a)     Estate Planning Advisors previously was named and/or previously did business under the name  Funding and Financial Services .

11.     Defendant Brian J. Newmark is upon information and belief, an adult individual

6

who resides and works in the Commonwealth of Pennsylvania, in this district.

      (a)    At all relevant times hereto, defendant Newmark was the President of Estate Planning Advisors.

      (b)    At all relevant times hereto, defendant Newmark was the principal and/or controlling person of EPA.

      (c)    Brian Newmark has never met either of the Walkers and only spoke with Thomas Walker once.

      (d)    Yet, Brian Newmark s signature appears as a witness on at least four (4) of the six (6) tax-free charitable  tax-free  annuities  of NCF, which defendants induced the Walkers to purchase.

12.    Defendant Mary A. Chiavaroli is upon information and belief an adult individual who resides in this district.

      (a)    At all relevant times hereto, defendant Chiavaroli was the Vice President of Operations of Estate Planning Advisors, and knew of or should have known of the wrongful activities of defendants, and/or also aided or encouraged such activities, on behalf of defendants to plaintiffs.

13.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331, as the claims assert one or more causes of action under federal law.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367.

14.    Venue is proper in this district pursuant to 28 U.S.C. §1391 in that one or more defendants reside in this district, one or more of the defendants work or do business in this district, and because a substantial part of the events or omissions giving rise to plaintiffs' claims occurred in this district.

15.     The amount in controversy exceeds the sum of $150,000.00.

## COUNT I

### FRAUDULENT MISREPRESENTATIONS
### (AGAINST ALL DEFENDANTS)

16.     Plaintiffs incorporate by reference herein all preceding and succeeding paragraphs, as if fully set forth at length.

17.     Thomas Walker and Arthur Walker are brothers who grew up together,  lived and live together, and worked together, most all of their lives.

18.     The Walkers were engaged in the business of making tombstones from 1952 until they sold their business and retired in 1988.

19.     In 1988, when the Walkers they sold their business and retired, they each had over $2 million dollars.  Their assets and savings comprised mainly a diverse portfolio of liquid and marketable securities, such as General Motors Corp. stock, AT&T Corp. stock and Lucent Technologies, Inc.  The Walkers also owned their homes in Pennsylvania and Florida.

20.     From the time the Walkers retired in 1988, until June 27, 2001, the Walkers lived comfortably off their assets and savings.

21.     Prior to June, 2001, each of the Walkers had a Will in which, in general, they each left a  $250,000.00 bequest to their sister, Joyce Kriso, and the balance of their estate to the other brother; upon their death, the balance of the remaining brother's estate would go to their sister, if the other brother was not living.

22.     On June 27, 2001, while the Walkers were at home enjoying their day, a young, pretty, good-figured woman who identified herself as Victoria Larson, a defendant herein, knocked on their door, identified herself as a representative of the Bohmueller law offices and

(the predecessor of) Estate Planning Advisors, and solicited each of the Walkers to hire her employers to undertake a comprehensive estate plan for the Walkers, by touting the tax-free benefits of the investment and estate planning, legal and other services the defendants had to offer the plaintiffs and the tax-free benefits the defendants would be able to achieve for the plaintiffs.

23.    Plaintiffs believe and thus aver that they were targeted by defendants.

24.    Defendant Larson was not asked to come to the Walkers' home by either of the Walkers or anyone else acting on their behalf.

25.    After driving 130 miles up the Pennsylvania Turnpike from the King of Prussia area, defendant Larson did not solicit any of the plaintiffs' other neighbors (the Walker home was the only house on Philadelphia Avenue, and to plaintiffs' knowledge, the only house in Tunkhannock, Pennsylvania) that defendants through Larson approached.

26.    Defendant Larson solicited the Walkers to employ the legal services of the Attorney Defendants (including Bohmueller, Wight, and John Does 1-10), as well as the estate planning services of the other defendants, by representing to the Walkers that their current Wills and estate plan were inadequate, and that defendants could provide legal and estate planning services to the Walkers which would result in  tax-free  income to the Walkers, as well as significant other estate advantages to them, and defendant repeatedly touted the  "tax-free results that defendants could achieve for plaintiffs.

27.    Defendant Larson made the aforesaid representations to the Walkers, for herself and on behalf of one or more of the other defendants, and knew or should have known that her representations were false and misleading.

(a)    In the alternative, when defendant Larson made those representations to

9

the Walkers on behalf of herself and other defendants, she made those representations recklessly in disregard of their truth or falsity.

28.    The representations made by defendant Larson were made to induce the Walkers to trust her and the other defendants and turn their entire estate over to defendants, so that she and the other defendants could reap substantial fees and benefits from the sales of the Walkers assets, the Walkers' purchases of " tax-free  annuities" from defendant NCF, and the creation of the living trusts for the Walkers.

29.    A short time after defendant Larson solicited plaintiffs, defendant Wight, for himself and in concert with the Bohmueller legal defendants and the other  estate planning defendants, met several times with the Walkers, purportedly befriending them, and talked and induced them into giving defendants their life savings, by representing to the Walkers, among other things:

(a)    that their current Wills and estate plan were inadequate; that they could turn the Walkers  taxable income into "tax-free" income through the purchase of  tax-free" charitable annuities, and turn the Walkers  taxable assets into tax-free assets through the creation of living trusts;

(b)    that the  tax-free  annuities the Walkers would be purchasing would be very safe and almost risk-free;

(c)    that the Walkers had the right to rescind the investment if they wanted at a later date;

(d)    that one brother's interest and investment would pass to the other, upon the first brother's death;

(e)    that the new estate plan would insure that each brother would leave at

10

least $250,000 to their sister, Joyce Kriso; and

       (f)    that the trusts which would be created and the  tax-free  annuities in which the brothers would invest, were specifically tailored to meet the brothers' needs and to shield their income and assets from all further taxes.

      30.    Defendant Wight solicited the Walkers to employ the legal services of himself, and defendants Bohmueller and John Does 1-10, as well as the estate planning services of the other defendants, by representing to the Walkers that their current Wills and estate plan were inadequate, and that defendants could provide legal and estate planning services to the Walkers which would result in tax-free income to the Walkers, as well as significant estate advantages to them, through the purchase of "tax-free" charitable annuities" as well as the creation of living trusts, among other things.

      31.    Defendant Wight made the aforesaid representations to the Walkers, for himself and on behalf of the defendants, and knew or should have known that his representations were false and misleading.

       (a)    In the alternative, when defendant Wight made those representations to the Walkers for himself and on behalf of the defendants, he made those representations recklessly in disregard of their truth or falsity.

      32.    In justifiable reliance upon the aforesaid representations of defendant Larson and defendant Wight, on behalf of themselves and the other defendants, plaintiffs placed their trust and confidence in defendants, expecting that the defendants would act in the best interests of the Walkers.

      33.    The Trust Agreement and other documents that defendant procured, prepared, sold and/or presented to plaintiffs, were "canned" or form estate documents, without regard to

the best interests or special needs or interests of the plaintiffs, and were procured and were the product of defendants' undue influence over and false representations made to, and material omissions kept from, the plaintiffs.

34.     Wight, at all times relevant herein, was the authorized representative or agent for defendants, was acting in the course and scope of his agency, and with the authority from defendants, as well as on his own, to advise persons such as plaintiffs with respect to the purchase of investments and securities, and he made specific recommendations to the Walkers for himself and on behalf of defendants for the Walkers  purchases of the "tax-free" charitable annuities of NCF.

35.     Wight falsely and fraudulently represented expressly or by innuendo to plaintiffs, among other things, that Wight would receive payment from defendant Bohmueller for his help and legal and other services in purchasing the  tax-free  annuities and in setting up the trusts; that the payments received by defendants under the  tax-free  annuities would be received tax-free by the Walkers, that their assets would pass tax-free as a result of the defendants  estate planning, that the Walkers  existing estate plan was lacking and needed to be changed; that he and the defendants that he spoke for were experts in estate law and estate and tax planning, and that he and the other defendants would get the best interests of the Walkers.

36.     The representations made by defendants as averred above were known by defendants to be false, or were made recklessly in disregard of their truth or falsity, and were made by defendants to induce plaintiffs to trust them and turn their entire estate over to them so that they could reap substantial fees from the sales and liquidation of plaintiffs' portfolios, and the Walkers' purchases of the "tax-fee" charitable annuities, which in effect were disguised securities investments (without proper registration or required documents), and the creation of

12

the living trust agreements.

37.     Plaintiffs, in justifiable reliance on defendants' misrepresentations, placed their trust and confidence in Wight, Larson, Bohmueller and the other defendants, and turned over their entire estate to defendants, allowing them to liquidate their entire investment portfolios of safe, minimal risk securities, and instead to invest their life savings in  tax-free  charitable annuities through defendant NCF, and to set up a bogus "living trust" for plaintiffs  remaining assets; defendants liquidated and invested the $4 million life savings of the Walkers, exclusively and in effect, permanently placed, in NCF  tax-free  annuities.

38.     As a direct and proximate result of the conduct of defendants as described herein, plaintiffs were damaged in the amount of approximately $4 million, which amount is their life savings.

39.     As a further direct and proximate result of the wrongful conduct of defendants, as described herein, plaintiffs were and continue to be damaged in the amount of professional fees, including accounting and estate planning and attorney's fees and costs incurred and to be incurred by the Walkers in determining and correcting the numerous estate planning errors resulting from defendants' conduct, and also in pursuing action to recover their assets.

40.     Defendants Bohmueller, Newmark, EPA, NCF and Chiavaroli and John Does 1-10 are individually, jointly and severally liable for the fraudulent representations of defendants Larson and Wight and Chiavaroli made within the course and scope of his/her agency and in furtherance of the business of defendants and in furtherance of establishing the business scheme utilized by defendants to defraud plaintiffs.

41.     By reason of the fraudulent, reckless, malicious, willful, wanton misconduct of defendants, and each of them, which were intentional and deliberate, plaintiffs demand punitive

13

damages.

**WHEREFORE**, plaintiffs demand judgment against defendants, and each of them,

individually, jointly and severally, as set forth in the Prayer for Relief, below.

**COUNT II**

**NEGLIGENT MISREPRESENTATIONS**
**(AGAINST ALL DEFENDANTS)**

42.    Plaintiffs incorporate by reference herein all preceding and succeeding

paragraphs, as if fully set forth at length.

43.    Defendants, on their own behalf and by and through their agents and

representatives Wight and Larson and Chiavaroli, misled the Walkers by holding out defendants

with an aura of estate planning law and expertise and respectability, and falsely and fraudulently

represented expressly and by innuendo to plaintiffs, among other things, that defendants were

experts in the area of estate law and planning, and that defendant NCF's charitable  tax-free

annuities were tax-free and very low risk investments.

44.    The representations made by defendants, as averred above, were false as, among

other things,

(a)    the estate plan of the Walkers prior to defendants' involvement was not

inadequate;

(b)    the estate plan and investments in the  tax-free" charitable annuities of

NCF devised and recommended by defendants for the Walkers was not better than their existing

estate plan, and was not in the Walkers  best interests, and did not result in  tax-free  income to

the Walkers, and did not result in the Walkers being able to pass their assts  tax-free  upon their

deaths;

14

(c)     the  tax-free  annuities and investments defendants sold to the Walkers are not tax-free, and the living trusts created by defendants for plaintiffs do not result in tax-free income and the shielding of plaintiffs assets from further taxation;

(d)     the NCF  tax-free  annuities which defendants procured for plaintiffs are not safe and are not risk-free, but instead, are terrible investments for the Walkers, since their previously existing diversified investment portfolios (in primarily blue chip and other marketable, liquid securities) were sold by defendants and instead turned into an investment in one-entity, NCF (which investment actually is a disguised security investment in NCF, without the required proper disclosure or registration, especially since the Walker investment in NCF constituted 9% of the total assets of defendant NCF as of year end 2001, and constituted 16-1/2% of the 2001 yearly revenues for NCF, and constituted 73% of the 2001 yearly NCF "profit" (actually termed "excess" by NCF, which is registered as a non-profit organization));

(e)     the Walkers did not have the right to rescind the investment whenever they wanted;

(f)     the  tax-free   tax-free  annuities set up by defendants do not all pass upon one brother's death to the other brother;

(g)     the new estate plan and the living trusts created by the defendants for the Walkers does not provide for at least $250,000 to be bequeathed by each brother to their sister; and

(h)     the living trusts created for the brothers, and the  tax-free  annuities which defendants induced the brothers to purchase, were not tailored to the needs of the brothers and do not shield their income and assets from further taxes, but to the contrary, the trust agreements were  canned  or form documents, and the estate plan left the brothers in much

15

worse shape than they would have been in had the plaintiffs never engaged in business with any of the defendants.

45.     The representations made by defendants, through their agents, their publications and their scheme which plaintiffs suspect defendants use to pray upon other elderly and vulnerable persons in similar fashion to how they were used by defendants to pray upon plaintiffs in this case, were known by defendants to be false, or were made recklessly and in disregard of their truth or falsity, and were made by defendants to induce plaintiffs to trust defendants and to turn over their entire estate to defendants, in order that defendants could reap substantial fees from the sales and liquidation of plaintiffs' original portfolios, and the purchases of the "tax-free  annuities, which are really securities, and the creation of the living trusts.

46.     Plaintiffs, in justifiable reliance on defendants' misrepresentations, placed their trust and confidence in defendants, and turned over their entire $4 million estate to defendants, allowing them to liquidate their entire investment portfolio of diversified, safe, minimal risk securities, incurring substantial penalties or forfeiting earnings in some instances, and instead to set up a living trust, and to invest all of plaintiffs' life savings exclusively in a one-entity higher risk investment (in NCF), which defendants held out as an "annuity" but which investment actually comprised an investment security in defendant NSF without proper registration or disclosure by defendants.

47.     As a direct and proximate result of the wrongful conduct of defendants, as described herein, plaintiffs were damaged in the amount of approximately $4 million, which amount represents their life savings.

48.     As a further direct and proximate result of the wrongful conduct of defendants, as described herein, plaintiffs were and continue to be damaged in the amount of professional fees,

including accounting and estate planning and attorney's fees and costs incurred and to be incurred by the Walkers in determining and correcting the numerous estate planning errors resulting from defendants' conduct, and also in pursuing action to recover their assets.

49.     By reason of the fraudulent, reckless, misleading, malicious, willful, wanton misconduct of defendants, and each of them, which was intentional and deliberate, plaintiffs demand punitive damages.

**WHEREFORE**, plaintiffs demand judgment against defendants, individually, jointly and severally, as set forth in the Prayer for Relief, below.

**COUNT III**

**CIVIL CONSPIRACY**
**(AGAINST ALL DEFENDANTS)**

50.     Plaintiffs incorporate by reference herein all preceding and succeeding paragraphs of this pleading, as if fully set forth at length.

51.     Defendants owed a duty, imposed by common law, to the Walkers, to represent them and their interests in a fair and honest manner, and to invest their finances in conservative, low-risk investments that would be tax-free and safe, pursuant to their representations to the Walkers, and the Walkers  requests and expressed desires, and not to enter into an illegal and/or improper agreement, and not to engage in self-dealing to derive profits at the expense of plaintiffs and their interests (absent full and fair disclosure to and consent given by plaintiffs with respect to said self-dealing).

52.     Defendants did conspire and act in concert together with the intent to defraud plaintiffs and deprive the Walkers of their life savings, including without limitation, in the following manner:

17

(a)      Defendants represented that they would carefully invest the life savings of the plaintiffs in diversified low-risk or minimal-risk investments that would result in tax-free income to the plaintiffs, and that they would prepare an estate plan, including appropriate living trust vehicles, that would result in the Walkers assets passing tax-free upon their deaths, and that the estate plans the defendant prepared for plaintiffs would assure that their sister, Joyce Kriso, would receive at least $250,000 from each brother, as well as the house in Pennsylvania, and be able to keep and afford the house, when defendants never intended to accomplish said goals, but desired instead to get control of plaintiffs' assets, to earn commissions and profit themselves at the expense and to the detriment of the plaintiffs and their interests;

(b)      Defendants represented that they would place plaintiffs' funds and/or securities into low-risk conservative investments that would generate tax-free income to the plaintiffs, and that would shield from taxation future income received by the plaintiffs, when defendants knew that the charitable tax-free annuities comprising the tax-free investment were and would be taxable, and defendants knew or should have known that there was no need for an investment to shield plaintiffs' future income, since both brothers already were retired, and both brothers already had substantial tax-free investments in their existing portfolios;

(c)      Defendants failed to disclose to plaintiffs their relationships with one another, and the fees and profits that defendants would receive and possibly continue to receive from one another, and others, in connection with the estate planning and investment scheme that they came up with to deprive plaintiffs of their life savings;

(d)      Defendants represented that the NCF charitable tax-free annuities were safe investments which were tax-free investments for the benefit of the plaintiffs, when in fact they merely created the annuity investments and living trust scheme as a fraudulent device to

18

deprive plaintiffs of their life savings;

(e)     Defendants represented that their estate plan and investment scheme they devised would provide for the estate of one brother to pass to the other brother upon the death of the first (after a $250,000 bequeath from the brother to their sister), when in fact the defendants knew that the majority of the  tax-free  annuities purchased for the plaintiffs did not and do not provide for the transfer of the monthly payments to the other brother upon the death of the first brother, and when the defendants knew that neither the  tax-free  annuities nor the trusts provided by defendants for plaintiffs insured or were designed so that each brother would be able to pass $250,000 to their sister;

(f)     Defendants represented that they would implement plaintiffs' interests to have conservative low-risk investments, when in fact, defendants knew that the NCF  tax-free  annuities they purchased for plaintiffs were substantially higher risk securities than even those securities previously held by plaintiffs in their previously existing portfolios;

(g)     Defendants represented to plaintiffs that the  tax-free  annuities could be liquidated and the trusts rescinded, when in fact, the defendants knew such representations were not true;

(h)     Defendants did not disclose their history or true business relationships and failed to state other material facts, the same being manipulative and deceptive.

53.     Defendants, did act in concert as aforesaid and combine to do an unlawful thing, or to do a lawful thing in an unlawful manner.

54.     Defendants, in furtherance of their conspiracy, did have a common purpose supported by concerted action, and acted with intent to accomplish their unlawful scheme to wrongfully deprive the plaintiffs of their life savings in order to personally profit therefrom,

without regard to the needs and the interests of the plaintiffs.

55. Defendants repeatedly represented to plaintiffs that they were experts in the field of estate law and estate tax and they possessed and were able to render competent and professional tax planning investment advice with respect to plaintiffs' assets.

56. Defendants knew that plaintiffs were elderly and unsophisticated and knew relatively nothing about investments and the stock market, and nothing about the charitable tax-free annuities market, and were generally unfamiliar with the techniques of successful portfolio analysis and management.

57. Defendants established and agreed to a fraudulent scheme that included the sale of all of the plaintiffs' assets in their existing diversified portfolios comprising their life savings, and the investment of the proceeds in a "tax-fee charitable annuity that in reality was a disguised security sale without proper registration or disclosure, since the Walkers tax-free investment was a 9% investment in the total assets of NCF, and in the creation of trusts, all of which was facilitated by the unlawful combination of the defendants unlawfully causing the plaintiffs to turn over their entire fortune to the defendants.

58. Defendants, and each of them, knew or should have known that the above-described devices were being employed, and plaintiff believes and thus avers that defendants, and each of them, intentionally conspired and agreed to keep plaintiffs ignorant of the true nature of their scheme.

59. Defendants entered into an illegal agreement to set up the living trusts, and liquidate plaintiffs life savings and instead invest plaintiffs' life savings in the NCF tax-free annuities, with the intent to defraud and exploit plaintiffs out of their money through their subterfuge and conspiracy.

60.     As a direct and proximate result of the conduct of defendants, as described herein, plaintiffs were damaged in the amount of approximately $4 million, which comprises their life savings that the plaintiffs were induced to turn over to the defendants.

61.     As a further direct and proximate result of the conduct of defendants, as described herein, plaintiffs were damaged by the amounts of professional fees, including accounting and estate planning professional fees, as well as attorney's fees, and expenses, that the plaintiffs have incurred and will in the future incur to determine and rectify the problems caused by the defendants' wrongful conduct, and also in pursuing action to recover their assets.

62.     By reason of the fraudulent, reckless, malicious, willful, wanton misconduct of defendants, and each of them, which were intentional and deliberate, plaintiffs demand punitive damages.

**WHEREFORE**, plaintiffs demand judgment against defendants, individually, jointly and severally, as set forth in the Prayer for Relief, below.

### COUNT IV

### VIOLATIONS OF FEDERAL SECURITIES LAWS
### (AGAINST ALL DEFENDANTS)

63.     Plaintiffs incorporate by reference herein all preceding and succeeding paragraphs of this pleading, as if fully set forth at length.

64.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements they made not misleading; and (iii) engaged in acts, practices and a course of business which operated as a fraud and deceit upon plaintiffs, in an effort to raise funds for NCF, in violation of §10(b) of the Exchange Act and Rule 10b-5, and the applicable Pennsylvania

21

securities laws, including without limitation 70 Pa. C.S.A. §§1-401 and 1-403.

65. Defendants had a duty to promptly disseminate to plaintiffs truthful information that would be material to plaintiffs, including accurate and truthful information with respect to NCF's operations, financial condition and earnings, as well as defendants relationships by and among themselves and NCF, so that an investment by plaintiffs in NCF would be based on truthful, complete and accurate information. Examples of such misrepresentations and omissions of material facts, in addition to the specific misrepresentations alleged elsewhere in this pleading, include, but are not limited to:

(a) Taking the Walkers investment and estate plan and providing a false sense of legitimacy to NCF, its financial viability, and the tax-free annuities investments plaintiffs were induced to purchase in NCF;

(b) Falsely representing to plaintiffs that the NCF tax-free annuities were good investments for plaintiffs, which were diversified and low-risk investments;

(c) Falsely representing to plaintiffs that the investment return on the NCF tax-free annuities was and would be tax free;

(d) Falsely representing to plaintiffs that their investment in NCF tax-free annuities was with a strong, established company, when in fact the plaintiffs' investment was 9% of NCF's total 2001 assets, and 16-1/2% of NCF's year 2001 revenues, and 73% of NCF's yearly "profit" (which NCF terms "excess");

(e) Falsely representing to plaintiffs that the tax-free annuities and estate plan schemes diversed by defendants would benefit plaintiffs better than their existing portfolio and estate plan;

(f) Failing to disclose the true nature and extent of NCF and its financial

22

condition, and the true nature, extent and substantial impact of plaintiffs' investment in NCF tax-free annuities.

66. Defendants, individually and/or through their agents, had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.

67. As a result of the dissemination of the materially false and misleading information and failures to disclose material facts, as set forth above, the true nature, extent, and value of plaintiffs' investment in NCF tax-free annuities was withheld from and not disclosed to plaintiffs.

68. Relying directly or indirectly on the false and misleading statements made by the defendants and/or through their agents, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendants, plaintiffs' invested their life savings in NCF and were damaged thereby.

69. At the time of said representations and omissions, plaintiffs were ignorant of their falsity, and believed them to be true.  Had plaintiffs known of the true facts, as well as the financial conditions and business prospects of NCF, as well as the true nature, extent and value of their investment in NCF, which were not disclosed by defendants, plaintiffs would not have invested in the NCF tax-free annuities.

70. The NCF tax-free annuities that defendants induced plaintiffs to purchase actually are disguised securities comprising investments in NCF made without the registration and/or disclosures required by law and/or by one or more persons not registered as broker dealers as required by law.

71.     By virtue of the foregoing, defendants have violated §10(b) of the Exchange Act, and Rule 10B-5 promulgated thereunder, as well as Pennsylvania securities laws, including without limitation 70 Pa. C.S.A. §§1-401 and 1-403.

72.     As a direct and proximate result of defendants' wrongful conduct, plaintiffs suffered damages in connection with their $4 million investment in NCF.

73.     As a further direct and proximate result of the wrongful conduct of defendants, as described herein, plaintiffs were and continue to be damaged in the amount of professional fees, including accounting and estate planning and attorney's fees and costs incurred and to be incurred by the Walkers in determining and correcting the numerous estate planning errors resulting from defendants' conduct, and also in pursuing action to recover their assets.

74.     By reason of the fraudulent, reckless, malicious, willful, wanton misconduct of defendants, and each of them, which were intentional and deliberate, plaintiffs demand punitive damages.

     **WHEREFORE**, plaintiffs demand judgment against defendants, individually, jointly and severally, in accordance with the Prayer for Relief, below.

## COUNT V

### PENNSYLVANIA BLUE SKY LAW VIOLATIONS
### (AGAINST ALL DEFENDANTS)

75.     Plaintiffs incorporate by reference herein all preceding and succeeding paragraphs, as if fully set forth at length.

76.     Plaintiffs bring this claim under the Pennsylvania Securities Act of 1972, 70 Pa. C.S.A. §§1-101 *et seq*., for damages suffered by plaintiffs as a result of defendants and each of their actions.

24

77.    Plaintiffs believe and thus allege that at the time defendants advised, encouraged, persuaded and induced plaintiffs to transfer their $4 million life savings to defendants and to purchase NCF tax-free annuities and create *inter vivos* trusts, defendants knew that the plaintiffs were acting in reliance on the statements and representations of defendants and that plaintiffs believed defendants would act in their best interests, as well as that plaintiffs' experience in the areas of securities investment was extremely limited, as well as that plaintiffs had no experience in the area of tax-free charitable annuities ; that plaintiffs' investment objective was tax-free income and safe investments for them and their heirs; that they wanted to save taxes and ensure that each brother gave $250,000 to their sister upon their deaths; and that the $4 million funds in their investment portfolios being turned over to defendants represented plaintiffs' life savings and basically their entire estate.

78.    On several occasion before plaintiffs turned over their life savings to the defendants, thus giving defendants exclusive control over their estate and investments, plaintiffs advised defendants, and defendants represented to plaintiffs, that they would achieve their stated objectives although the investment and trust schemes presented to plaintiffs to induce them to turn over control of their assets to the defendants (but the defendants failed to achieve the Walkers' stated investment objectives).

79.    In reliance on the statements and representations of defendants, the plaintiffs turned over their entire investment portfolios to defendants and purchased the NCF tax-free annuities which defendants induced plaintiffs to acquire as part of their scheme, and executed the trust agreements prepared by the defendants, again in furtherance of their scheme.

80.    Plaintiffs believe and thus allege that defendants, and each of them, derived substantial commissions, payments, charges, and other revenues or benefits in connection with

and resulting from their (successful) scheme to induce plaintiffs to turn over their $4 million life savings to the defendants, and the liquidation of the Walkers existing portfolio, and the Walkers investment of tax-free annuities in NCF.

81.     Plaintiffs believe, and thus allege, that the actions of defendants, in the investment and NCF tax-free annuities scheme that they presented to plaintiffs in order to induce them to turn over their life savings to defendants, were unwarranted in light of plaintiffs' total, existing, diversified, investment portfolios at the time, their stated investment objectives, and their stated estate planning purposes, and that the commissions, payments, etc received by or paid to defendants therefrom were excessive and unwarranted.

82.     Plaintiffs further allege that the NCF tax-free annuity investments which plaintiffs induced them to purchase were not tax-free and also were unsuitable for plaintiffs particular investment needs and desires and not diverse at all, let alone adequately diverse as desired by the Walkers.

83.     Plaintiffs, because of their trust and confidence they were induced to place in the defendants, and without fully understanding what the results of their actions were, were induced to enter into the series of securities transactions recommended by defendants (their purchases of the NCF investment tax-free annuities), and to entrust to the handling of their entire pre-existing, diversified, liquid marketable securities portfolios to the defendants.

84.     In addition to the material misrepresentations of defendants, defendants also omitted to state material facts, which, in light of the statements and representations made and the circumstances under which they were made, were misleading, including without limitation, as follows:

(a)     The NCF tax-free annuities were not tax-free, and were substantially

26

higher risk securities than those securities previously held by plaintiffs;

       (b)    The securities (the NCF  tax-free  annuities) being purchased for plaintiffs generated commissions and other payments or earnings to one or more of the defendants, either in connection with the initial NCF investment or otherwise;

       (c)    Liquidation of some of plaintiffs' existing investment portfolios to purchase the NCF  tax-free  annuities may have resulted in penalties and costs charged to plaintiffs or earnings lost to plaintiffs, by reason of liquidating some of the securities early;

       (d)    Plaintiffs' funds were invested solely in NCF annuities, which could not be invested or traded elsewhere regardless of the financial health or success of NCF.

85.    Plaintiffs reasonably did rely upon the representations of the defendants in liquidating their investment portfolios and in purchasing the NCF  tax-free  annuities, and in establishing the trust agreements which defendants recommended and represented to plaintiffs would be in their best interests.

86.    The above-described misrepresentations and omissions were material and were made with the intention that plaintiffs rely thereon.

87.    Defendants' conduct and representations, and their failures to state material facts, was manipulative, misleading and deceptive.

88.    The above-described misrepresentations and omissions were material and were made with the intention that plaintiffs rely thereon.

89.    Plaintiffs reasonably did rely upon the representations of the defendants to plaintiffs  detriment in allowing defendants to liquidate their existing, diversified, liquid, marketable securities investment portfolios, and instead purchasing the NCF  tax-free  annuities, and in establishing the living trust agreements which defendants recommended and

represented to plaintiffs were  tax-free  and would be in their best interests.

90.     The above-described misrepresentations and omissions were material and were made with the intention that plaintiffs relied thereon.

91.     The representations and omissions were false and/or misleading, and defendants, and each of them, either knew that they were false, or made the representations without reasonable grounds for believing them to be true and with reckless disregard as to whether or not they were true.

92.     By virtue of the foregoing, defendants have violated the Pennsylvania blue-sky laws, including without limitation, 70 Pa. C.S.A. §§ 1-401, 1-403, 1-404, 1-501, 1-502 and 1-503.

93.     Defendants and each of their conduct and activities as aforesaid, operated as a fraud and deception on plaintiffs, and constituted a manipulative and deceptive device and contrivance of defendants and each of them.

94.     Defendants and each of them, knew or should have known that the above-described devices were being employed, and plaintiffs are informed and believe and thereon allege, that defendants and each of them intentionally acted to keep plaintiffs ignorant of the situation.

95.     As a direct and proximate cause of the activities and conduct of the defendants, defendants have sustained damages of $4 million.

96.     As a further direct and proximate result of the wrongful conduct of defendants, as described herein, plaintiffs were and continue to be damaged in the amount of professional fees, including accounting and estate planning and attorney's fees and costs incurred and to be incurred by the Walkers in determining and correcting the numerous estate planning errors

resulting from defendants' conduct, and also in pursuing action to recover their assets.

97.     By reason of the fraudulent, reckless, malicious, willful, wanton misconduct of defendants, and each of them, which were intentional and deliberate, plaintiffs demand punitive damages.

**WHEREFORE**, plaintiffs demand judgment against defendants, individually, jointly and severally, in accordance with the Prayer for Relief, below.

### COUNT VI

### VIOLATIONS OF FLORIDA ELDERLY LAWS
### (AGAINST ALL DEFENDANTS)

98.     Plaintiffs incorporate by reference herein all preceding and succeeding paragraphs, as if set forth at length.

99.     Plaintiffs bring this claim under the Adult Protective Services Act, Florida. Statutes, title XXX, chapter 415, §415.101 e*t seq*., and 415.1111 (the "APSA"), for damages suffered by plaintiffs as a result of defendants and each of their actions.

100.    Plaintiffs are vulnerable adults within the meaning of the APSA.

101.    Defendants are caregivers and alleged perpetrators within the meaning of the APSA.

102.    Defendants exploited the plaintiffs within the meaning of the APSA, in that:

(a)     Defendants stood in a position of trust and confidence with the Walkers, and

(b)     By deception, as set forth in detail in this pleading, defendants obtained or used the plaintiffs' funds, assets, or property, with the intent to temporarily or permanently deprive plaintiffs of the use, benefit, or possession of their assets or property; and

29

(c)     defendants knew or should have known that plaintiffs lacked the capacity to consent to their actions; and

(d)     defendants breached their fiduciary duties which they owed to the plaintiffs, as set forth in detail in this pleading; and

(e)     defendants' taking of the plaintiffs' assets and properties was an unauthorized taking; and

(f)     defendants misappropriated, misused, or transferred money or assets belonging to the plaintiffs.

103.    Defendants, by reason of their wrongful conduct as aforesaid, violated the ASPA.

104.    As a direct and proximate cause of the activities and conduct of the defendants, defendants have sustained damages of $4 million.

105.    As a further direct and proximate result of the wrongful conduct of defendants, as described herein, plaintiffs were and continue to be damaged in the amount of professional fees, including accounting and estate planning and attorney's fees and costs incurred and to be incurred by the Walkers in determining and correcting the numerous estate planning errors resulting from defendants' conduct, and also in pursuing action to recover their assets.

106.    By reason of the fraudulent, reckless, malicious, willful, wanton misconduct of defendants, and each of them, which were intentional and deliberate, plaintiffs demand punitive damages, pursuant to Fla. Stat. §415.1111.

107.    Plaintiffs also are entitled to and claim reimbursement for their attorneys fees and costs, pursuant to Fla. Stat. §415.1111.

**WHEREFORE**, plaintiffs demand judgment against defendants, individually, jointly and severally, in accordance with the Prayer for Relief, below.

## COUNT VII

### PROFESSIONAL NEGLIGENCE
### (AGAINST THE ATTORNEY DEFENDANTS,
### INCLUDING BOHMUELLER, WIGHT AND LARSON)

108.    Plaintiffs incorporate by reference herein all preceding and succeeding paragraphs, as if set forth at length.

109.    The Attorney Defendants (including defendants Bohmueller, Wight and Larson) provided legal advice to plaintiffs, as respects the estate plan created by defendants for plaintiffs, the liquidation of the plaintiffs' existing investment portfolios, and the subsequent  tax-free investments which plaintiffs were induced to purchase.

110.    As attorneys for plaintiffs, the Attorney Defendants owed a common law duty to plaintiffs to provide legal representation to plaintiffs with the necessary skill, confidence, prudence and diligence.

111.    The aforesaid duties which each of the Attorney Defendant owed to the plaintiffs included:

(a)    The duty to properly advise the Walkers with respect to the estate and tax planning services performed for the Walkers; and

(b)    The duty to become familiar with the assets and liabilities, and with the income and expenses, and with the estate plan desires and intentions, of the Walkers, with respect to any tax or estate planning they desired; and

(c)    The duty to maximize the tax and estate benefits resulting to the Walkers from the estate and tax planning undertaken within the scope of the Attorney Defendants  legal representation.

112.    The Attorney Defendants committed professional negligence (malpractice), in

31

that they failed to fulfill their duties which they owed to the plaintiffs as their attorneys, including without limitation, by:

> (a)    Failing to meet with plaintiffs;

> (b)    Failing to become familiar with the assets and liabilities of the Walkers, and with the income and expenses of the Walkers, and with the desires and intentions of the Walkers;

> (c)    Failing to structure an estate plan tailored to the specific needs of the Walkers, or that resulted in achieving the Walkers desire of tax-free income, or that resulted in ensuring that each brother would leave a minimum of $250,000 to their sister, or that resulted in each brother receiving the other brother s assets upon death.

> (d)    Failing to adequately and competently prepare or review the trust agreements and the effects the trust agreements would have on plaintiffs and their estate desires;

> (e)    Failing to adequately review the investments in the NCF  tax-free annuities recommended to the plaintiffs, or to discover that the NCF  annuities taxable and were actually were disguised investments in NCF, which securities were being sold without proper registration and/or disclosure, as required by law;

> (f)    Failing to reveal to plaintiffs that defendants were exploiting and fraudulently bilking the Walkers of their assets;

> (g)    Failing to reveal to plaintiffs that defendants were entering into and engaging in a conspiracy to defraud plaintiffs of their estate and money;

> (h)    Failing to recognize that one or more of the plaintiffs were in poor or deteriorating physical and/or mental condition, at a great risk and very susceptible to undue influence and/or duress.

32

113.    As a direct and proximate result of the carelessness and negligence of defendants Bohmueller, Wight and Larson, as set forth herein, the plaintiffs suffered damages in the amount of $4 million.

114.    As a further direct and proximate result of the wrongful conduct of defendants, as described herein, plaintiffs were and continue to be damaged in the amount of professional fees, including accounting and estate planning and attorney's fees and costs incurred and to be incurred by the Walkers in determining and correcting the numerous estate planning errors resulting from defendants' conduct, and also in pursuing action to recover their assets.

**WHEREFORE**, plaintiffs demand judgment against defendants, individually, jointly and severally, in accordance with the Prayer for Relief, below.

## COUNT VIII

### BREACH OF CONTRACT
### (AGAINST BOHMUELLER, WIGHT AND LARSON)

115.    Plaintiffs incorporate by reference herein all preceding and succeeding paragraphs, as if fully set forth herein

116.    Plaintiffs entered into an agreement with defendants whereby defendants were specifically instructed by plaintiffs to provide estate planning to plaintiffs that would result in (1) tax free income to the Walkers; (2) with each brother to pass $250,000 upon their death to their sister, and the remainder to the other brother; and (3) through conservative, low-risk or risk-free diversified investments.

117.    Defendants breached their agreement with plaintiffs by failing to deliver the contracted upon services, as aforesaid.

118.    Defendants  breaches included, without limitation: not providing tax-free income

to the Walkers; liquidating the Walkers  diversified and relatively safe $4 million dollar pre-existing investment portfolio of diverse, low-risk, liquid and marketable securities, and instead purchasing the high risk  tax-free  annuities in NCF, which investments in realty were taxable, and were disguised purchases of securities without proper disclosure or registration; not providing that each brother's assets would pass to the other brother upon the death of one brother; and not making provision so that each brother would pass $250,000 to their sister upon each brother's death

119.    As a direct and proximate result of defendants  breaches of contract, as aforesaid, plaintiffs have sustained damages of $4 million.

120.    As a further direct and proximate result of the wrongful conduct of defendants, as described herein, plaintiffs were and continue to be damaged in the amount of professional fees, including accounting and estate planning and attorney's fees and costs incurred and to be incurred by the Walkers in determining and correcting the numerous estate planning errors resulting from defendants' conduct, and also in pursuing action to recover their assets.

**WHEREFORE**, plaintiffs demand judgment against defendants, individually, jointly and severally, in accordance with the Prayer for Relief, below.

## COUNT IX

## BREACH OF FIDUCIARY DUTY
## (AGAINST ALL DEFENDANTS)

121.    Plaintiffs incorporate by reference herein all preceding and succeeding paragraphs, as if fully set forth herein.

122.    Defendants owed a duty, imposed by common law, to the Walkers, to represent them and their interests in a fair and honest manner, and to invest their finances in conservative,

low-risk investments that would be tax-free and safe, pursuant to defendants representations to

the plaintiffs, and the Walkers request, and not to enter into an illegal and/or improper

agreement, and not to engage in self-dealing to derive profits at the expense of plaintiffs and

their interests.

123.    Defendants breached the fiduciary duties which they owed to plaintiffs, by reason

of their wrongful conduct as aforesaid.

124.    As a direct and proximate result of defendants breaches of fiduciary duty, as

aforesaid, plaintiffs have sustained damages of $4 million.

**WHEREFORE**, plaintiffs demand judgment against defendants, individually, jointly

and severally, in accordance with the Prayer for Relief, below.

## COUNT X

### UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION
### (AGAINST ALL DEFENDANTS)

125.    Plaintiffs incorporate by reference herein all preceding and succeeding

paragraphs, as if fully set forth herein

126.    Plaintiffs bring this claim under the Pennsylvania Unfair Trade Practices and

Consumer Protection Law 73 P.S. §1201, *et seq.*

127.    Defendants repeatedly represented to plaintiffs that they were experts in estate

planning and investments, but failed to inform plaintiffs of the interrelationships and the

agreements among the defendants.

128.    Defendants persuaded plaintiffs to use the Attorney Defendants as plaintiffs'

attorneys, and to utilize the services of the other defendants, to prepare and review the

complicated trust agreements and to liquidate their existing investment portfolio and instead

35

invest in the NCF  tax-free  annuities, by using false and misleading information as to the benefits flowing to plaintiffs therefrom.

129.    Defendants in their own publications and through their agents, represented to plaintiffs that they were experts in the field of estate planning and investments, and failed to disclose to plaintiffs the true nature of their investment and estate planning scheme, as well as the business and other relationships between the defendants, as well as the true nature, extent and value of the NCF  tax-free  annuities.

130.    Defendants and each of their conduct and activities in gaining access to plaintiffs' funds, were unlawful and operated as a fraud and deception on the plaintiffs,  which constituted unfair and deceptive acts or practices as defined in 73 P.S. §201-2, in that they caused the likelihood of confusion or misunderstanding as to affiliation, connection, or association with each other; they disparaged the services or estate plan prepared by the plaintiffs' former counsel, by false or misleading representations of fact; and they engaged in fraudulent conduct which created a likelihood of confusion or misunderstanding.

131.    Plaintiffs purchased defendants estate planning and investment vehicles and each of their services and securities for personal, family and/or household purposes.

132.    Plaintiffs suffered an ascertainable loss of money as a result of the use or employment by defendants and each of them of unlawful acts as described herein in the actual amount of $4 million.

133.    As a further direct and proximate result of the wrongful conduct of defendants, as described herein, plaintiffs were and continue to be damaged in the amount of professional fees, including accounting and estate planning and attorney's fees and costs incurred and to be incurred by the Walkers in determining and correcting the numerous estate planning errors

resulting from defendants' conduct, and also in pursuing action to recover their assets.

134.    By reason of the unlawful, fraudulent, deceptive, willful, wanton misconduct of defendants, and each of them, plaintiffs demand treble damages as allowed by law in 73 P.S. §201-9.2(a).

135.    By reason of the fraudulent, reckless, malicious, willful, wanton misconduct of defendants, and each of them, which were intentional and deliberate, plaintiffs demand punitive damages.

**WHEREFORE**, plaintiffs demand judgment against defendants, individually, jointly and severally, in accordance with the Prayer for Relief, below.

## COUNT XI

## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS (AGAINST ALL DEFENDANTS)

136.    Plaintiffs incorporate by reference herein all preceding and succeeding paragraphs, as if fully set forth herein.

137.    Defendants tortiously interfered with plaintiffs contractual relations with third parties, including without limitation, with the contractual relations existing by virtue of plaintiffs purchases of securities comprising their existing investment portfolios, by reason of defendants wrongful conduct as aforesaid.

138.    Plaintiffs, in justifiable reliance on defendants' misrepresentations, placed their trust and confidence in Wight, Larson, Bohmueller and the other defendants, and turned over their entire estate to defendants, allowing them to liquidate their entire $4 million investment portfolios of safe, minimal risk securities, and instead to invest their life savings in  tax-free  tax-free  annuities through defendant NCF, and to set up a bogus "living trust" for plaintiffs

37

remaining assets; defendants invested the $4 million life savings of the Walkers, exclusively and in effect, permanently placed, in NCF  tax-free  annuities.

139.    As a direct and proximate result of the conduct of defendants as described herein, plaintiffs were damaged in the amount of approximately $4 million, which amount is their life savings.

140.    As a further direct and proximate result of the wrongful conduct of defendants, as described herein, plaintiffs were and continue to be damaged in the amount of professional fees, including accounting and estate planning and attorney's fees and costs incurred and to be incurred by the Walkers in determining and correcting the numerous estate planning errors resulting from defendants' conduct, and also in pursuing action to recover their assets.

141.    By reason of the fraudulent, reckless, malicious, willful, wanton misconduct of defendants, and each of them, which were intentional and deliberate, plaintiffs demand punitive damages.

**WHEREFORE**, plaintiffs demand judgment against defendants, individually, jointly and severally, in accordance with the Prayer for Relief, below.

## COUNT XII

### TORTIOUS INTERFERENCE
### WITH PROSPECTIVE ECONOMIC ADVANTAGE
### (AGAINST ALL DEFENDANTS)

142.    Plaintiffs incorporate by reference herein all preceding and succeeding paragraphs, as if fully set forth herein.

143.    Defendants tortiously interfered with plaintiffs  prospective economic advantage, including without limitation, with the prospective economic advantage by reason of plaintiffs purchase of securities comprising their pre-existing investment portfolios, and the earnings

38

therefrom, and the Walkers' ability to use their assets as they saw fit, by reason of defendants wrongful conduct as aforesaid.

144.    Plaintiffs, in justifiable reliance on defendants' misrepresentations, placed their trust and confidence in Wight, Larson, Bohmueller and the other defendants, and turned over their entire estate to defendants, allowing them to liquidate their entire investment portfolios of safe, minimal risk securities, and instead to invest their life savings in tax-free annuities through defendant NCF, and to set up a bogus "living trust" for plaintiffs remaining assets; defendants invested the $4 million life savings of the Walkers, exclusively and in effect, permanently placed, in NCF tax-free annuities.

145.    As a direct and proximate result of the conduct of defendants as described herein, plaintiffs were damaged in the amount of approximately $4 million, which amount is their life savings.

146.    As a further direct and proximate result of the wrongful conduct of defendants, as described herein, plaintiffs were and continue to be damaged in the amount of professional fees, including accounting and estate planning and attorney's fees and costs incurred and to be incurred by the Walkers in determining and correcting the numerous estate planning errors resulting from defendants' conduct, and also in pursuing action to recover their assets.

147.    By reason of the fraudulent, reckless, malicious, willful, wanton misconduct of defendants, and each of them, which were intentional and deliberate, plaintiffs demand punitive damages.

**WHEREFORE**, plaintiffs demand judgment against defendants, individually, jointly and severally, in accordance with the Prayer for Relief, below.

## COUNT XIII

## UNJUST ENRICHMENT/QUANTUM MERUIT
## (AGAINST ALL DEFENDANTS)

148.    Plaintiffs incorporate by reference herein all preceding and succeeding paragraphs, as if fully set forth herein.

149.    Defendants were unjustly enriched by plaintiffs in the amount of $4 million by reason of the aforesaid.

150.    Also, or in the alternative, plaintiffs are entitled to a *quantum meruit* recovery against defendants in the amount of $4 million, by reason of the aforesaid.

**WHEREFORE**, plaintiffs demand judgment against defendants, individually, jointly and severally, in accordance with the Prayer for Relief, below.

## COUNT XIV

## FOR AN ACCOUNTING
## (AGAINST ALL DEFENDANTS)

151.    Plaintiffs incorporate by reference herein all preceding and succeeding paragraphs, as if fully set forth herein.

152.    Plaintiffs are entitled to and seek an accounting from defendants, among other things:

(a)    Itemizing and describing in detail each and every security and other asset turned over by plaintiffs to defendants; and

(b)    Itemizing and detailing the liquidation of each such assets, including date sold or disposed, manner of disposition, transferee, amount received (both gross and net of any commissions paid or earned);

(c)    Itemizing and detailing each and every payment earned or received by

40

each defendant, whether by NCF or otherwise, as well as by NCF, in connection with (i) the liquidation of plaintiffs existing investment portfolios, and (ii) the purchase of the NCF tax-free annuities; and (iii) the establishment of the living trusts.

**WHEREFORE**, plaintiffs demand judgment against defendants, individually, jointly and severally, in accordance with the Prayer for Relief, below.

## PRAYER FOR RELIEF

**WHEREFORE,** plaintiffs Arthur R. Walker, Jr. and Thomas J. Walker, each demand judgment in their favor as against defendants Barry O. Bohmueller, Esquire, Jon Wight, Esquire, Victoria Larson, John Does 1-10, Brian J. Newmark, individually and t/a Estate Planning Advisors Corp., Mary A. Chiavaroli, and New Life Corporation of America, d/b/a National Community Foundation, individually, jointly and severally, as follows:

(1)    With respect to all Counts, for compensatory, consequential and special damages in such amounts as are proved, to the maximum amount(s) allowable under applicable law; and

(2)    With respect to all Counts, for interest thereon, in the maximum amount allowable under applicable law; and

(3)    With respect to all Counts, for delay damages thereon, in the maximum amount allowable under applicable law.

(4)    With respect to all Counts, for costs of suit, in the maximum amount allowable under applicable law; and

(5)    With respect to Counts I, II, III, IV, V, VI, IX, X, XI and XII, for punitive damages, to the maximum amount permitted under applicable law; and

(6)    With respect to Counts IV, V, VI and X, for treble damages, to the

maximum amount permitted under applicable law; and

        (7)     With respect to Counts IV, V, VI and X, for an award of attorney's fees and costs, to the maximum amount allowable under applicable law; and

        (8)     With respect to Count XIV, for an accounting providing the information requested in said Count, and a return or turnover to plaintiffs of all monies received or profits earned by defendants; and

        (9)     With respect to all Counts, for such other and further relief as this Honorable Court shall deem just.

### DEMAND FOR JURY TRIAL

153.     Plaintiffs demand trial by jury as to all matters and issues so triable.

                          Respectfully submitted,
                          **LIGHTMAN, MANOCHI & CHRISTENSEN**

                 By:_____
                         Gary P. Lightman, Esquire
                         1520 Locust Street, 12th Floor
                         Philadelphia, PA  19102
                         (215) 545-3000

                         Attorneys for Plaintiffs
                         Thomas J. Walker and Arthur R. Walker, Jr.

DATED:       June 20, 2003